Good morning, everyone. The first matter is In Re Pharmacy Benefit Managers Antitrust Litigation. Mr. Montag. Good morning, Your Honors. I'm Lottie Montag, representing the Plaintiff Appellants, Bellevue Drug Company, and others, and I have four minutes for rebuttal. The panel wants to hear something on the jurisdiction issue before we begin. Okay, well, the jurisdiction, that is because we voluntarily dismissed. With prejudice. With prejudice, yes. What do we have left? Excuse me? How do we afford relief? If we affirm the order to compel arbitration, there's nothing left. It's gone because you've dismissed the complaint. If we reverse the order, compelling arbitration, what do we remand for? What further proceedings? The complaint has been dismissed with prejudice. Well, you know, the court could have compelled arbitration and dismissed with prejudice. It didn't do that, and we would have had the right to appeal, and if we were successful, we would then, if we were successful on appeal and arbitration was not compelled, the dismissal with prejudice would be vacated. I'm sure the answer is as clear as the nose on my face, but if you've dismissed a complaint with prejudice, everything's gone. What is there to arbitrate? That was the only way we could get. What about a 1292B certification, for example? That was not allowed. We moved for that earlier, and it was not granted by the district court. Well, the 1292B wasn't granted as to the decision on the merits in your favor, but not as to the compelling of arbitration. Yes, I believe we filed a motion for reconsideration and 1292B with respect to the motion to compel arbitration. That's not my recollection. I'm sure you're right. You know, there also is the alternative of going through the arbitration and going to the district court and appealing then after the arbitration is finished, going to the district court. Now, you're complaining that it's too expensive. Nevertheless, there is that remedy. That's why a granting of arbitration is not an immediately appealable order. Your Honor, respectfully, under this particular arbitration clause, for us to go to arbitration, that clause effectively precludes us from going to arbitration. Look what it does. Number one, it exposes us to the costs of experts and attorneys' fees of the defendants, something that the antitrust statute... But it also enables you to appeal that whole process at the end of it all. Well, I know, but that's a risk that is a very serious risk for a private litigant in an antitrust case to take. As your honors know, the costs of prosecuting and defending a complex antitrust case, and believe me, this was a complex antitrust case, is enormous with respect to expert witnesses, attorneys fees, etc. I mean, the court is littered with... Well, the expert witnesses, if the case were then to go to trial before the district court, the expert witnesses' testimony would all again be able to be used, wouldn't it? It is, but look at the risk. Look at the possible liability that the plaintiff is encountering. I'm not saying if it doesn't win on appeal. If it doesn't win on appeal, look at that cost that it's gone through, not only its own costs of arbitrating... It still can appeal that, right? It can appeal it, but that just adds to the risk and its outlay. The other part, the other thing that is missing from this particular, under this particular clause, is it is totally uncertain whether the plaintiffs have a right for treble damages. That, you know... Is that an issue for the arbitrator? I don't think it is an issue for the arbitrator, Your Honor, and that was our second... You have refused to go to arbitration, haven't you? We told the court we would not go to arbitration because we felt we were effectively precluded from doing so because of the onerous terms of the arbitration clause. Why don't, maybe we, let's move to the waiver issue and get your arguments on that. The waiver issue, Your Honor, is very important to us in that we litigated for 10 months with this defendant without them saying a word. There was no discovery, am I correct? There was no discovery other than, and I do want to point this out, the motion to dismiss was no ordinary motion to dismiss. Don't, yeah, don't... I have to show you. No, no, no, no, we want to, you can bring it over, but we want to have you on tape. I'm sorry. So if you move away from the mic, we're not going to be able to... I held up the motion to dismiss, which is approximately four inches thick with exhibits. That motion... Size of the Manhattan Yellow Page, is that correct? Well, I haven't... I wasn't sure which Yellow Pages you referred to in your paper. I apologize, Your Honor. That motion was argued, and then it was a motion for the defendant's move for reconsideration in 1292B. That was, again, argued. Okay. We then, we then, and I must point, sorry. As I understand it, your position is the district court gave too much weight to the fact that there was no discovery. Well, the court said, well, you're right back to where you started from. What's the big deal? Ten months... What's the prejudice? Excuse me? What is the prejudice? The prejudice is twofold. Number one, we end up... We end up in district... We expended a lot of money and time in defending these particular motions to dismiss, an incredible amount of time and effort. Secondly, we weren't back to where we began. In a scale of this case, what the expenses would be were this case to go to trial, this is very minor expenses. It certainly was expensive. Well, I don't know what minor is, but I would... How much was it? How much did you expend? I don't have the numbers, but I can... But that's... I would suspect... We have to have those numbers. Excuse me? The district judge would have had to have those numbers, or one can say... There definitely was expense, but it hasn't been quantified. We then... The one thing that wasn't mentioned in the court's papers was after they denied the reconsideration, he entered an order for a Rule 26F report. Plaintiffs prepared that report. Right before that report was submitted to the defendants for their consideration, defendants' counsel withdrew and there was new counsel. And four days after we submitted the motion for the 26F report, the defendants, for the first time, raised the issue of arbitration. Now, I believe they did it for a tactical reason. I mean, there's never been an explanation given as to why they waited. Well, he tried to win on the merits. They kept this in their back pocket until they saw if they would win on the merits. That's the only apparent reason. Well, there's a double reason for that. They could have litigated that before the arbitrator also. But what they did... They changed counsel. They changed counsel, but there was a tactic. I mean, there was a practical reason they did it. Whether this was their tactic, you don't know because they've never given an explanation. But there were other cases pending against them. And if they got a motion to dismiss decision in federal court, they've got a binding precedent for those other cases. If they get a motion to dismiss decision in arbitration, it's not binding precedent in federal court. So I think that might have been their tactic. When that failed, then they decided to go to arbitration. The other thing is they had knowledge of it. I mean, there's no question they had knowledge of the arbitration provision. I mean, they litigated it in Texas. They raised it and litigated it in Texas while all this was going on. They never told Judge Rubrino that. They never told us that. So that was not something that went into the mix. If this is the type of conduct and the pattern of conduct that this court wants to condone in the way an arbitration case, the way a defendant can raise arbitration in a case like this, I would be very surprised. Is the court's finding that you were not prejudiced a factual finding, reviewable for clear error? I'm not sure whether it's a factual finding or a finding of law. But I think that the point is that he didn't consider the fact that we were actually effectively precluded from litigating this case under arbitration because of the additional risks that we had to face. Our case law, of course, does permit waiver under certain circumstances and the various factors we've set forth. So it's not a blanket rule. And there is some leeway in the standard. Well, there are six Hawksworth factors, so to speak, three of which were in our favor. I find five of them in your favor. I'm sorry? I found five of them in your favor. I accept that. This judge actually only considered two of them. Well, he did, but I'm not really sure he considered two of them. One, he considered the fact that there was no discovery. And then he did look at the tenth. That was the critical one. And then he said there was ten months. This is such a big deal. And then he determined there was no prejudice. But he didn't look at anything. He didn't look at any of the other factors. Well, no discovery is an important factor. I suppose if you were to look at the Hawksworth factors and say, well, which is the most important? Our case law, at least the case law, in effect, at the time he ruled, eight years ago, made it quite clear that no discovery was a substantial factor. Let's hear something on the ambiguity issue. As I understand it, the argument is that perhaps the limitation on may pertain only to infringement of intellectual property rights. And it may not forbid the kind of remedies that you wish. What's your? Your Honor, if one is ambiguous, of course, then the matter, the unconscionability and the other matters are generally for the arbitrator. I would agree that if it is ambiguous, it's for the arbitrator. I agree with that. But we don't think it's ambiguous. The language is the arbitrator must follow the rule of law and may only award remedies provided in the agreement. If your Honors look at that agreement, and it's very difficult to read because the print is so small, but every single provision there that talks about a right or a remedy is a right or a remedy for advanced PCS. There are zero remedies in that document. Well, the arbitrator is charged to apply the rule of law. Now, can it not be suggested, and indeed it has been, that that would encompass the remedies sought here? That has been suggested, but my response is that they use the word and. And may not. So that modifies what he can do under the rule of law. And again, I would like to point out the series of sections of that agreement which are all pro-PCS and have nothing to do with the rights or remedies of the pharmacy. And I really suggest you will not find any right or remedy of the pharmacy in that provision. And they are 5.1, 6.2, 6.4, 7.1, 7.2, 8.3, 8.4, and 8.5. So that's why we say that there is no way that we can recover our remedy, which is treble damages, which the statute says the plaintiff shall receive under that particular statute. Let me ask my colleagues if they have any other questions. Have you back on. Is there something else you wanted to say? Well, two things. One, Your Honor, with respect to the jurisdiction, there's one case that we cited and a later case which we didn't cite, which I'd like to call you to your attention on the dismissal with prejudice. The one we cited was the Trevino-Barton versus Pittsburgh National Bank case, which is 919F2nd874. And then there's a later case called Huertas, H-U-E-R-T-A-S, versus City of Camden. And I apologize, we did not cite this. And that is 245FedAPPX168. And if I could just read from that, it's very short. I know I'm ‑‑ in footnote three it says, most courts of appeals have concluded that a voluntary dismissal with prejudice can be used as a vehicle to obtain immediate review of certain interlocutory orders. And then it said here that the plaintiff could not do it because it didn't inform the court that that was its purpose, which we certainly did that. And it goes on to say, one who seeks to come within the exception to this rule of non‑appealability after a voluntary dismissal should make his or her intentions known to the court and opposing parties. And that's exactly what we did. My only question on that, though, is if, when I open with, if the complaint's been dismissed, such for the purpose of giving you jurisdiction, giving the court us jurisdiction to review the compelling of arbitration, what is left? And what is left is if we are successful in saying that, before your honors, that this case should not have been sent to arbitration, then both the dismissal and the order, ordering arbitration, would be vacated. But there's been no motion to vacate the order of dismissal. It was an order entered at your behest, and nobody suggests the district court was wrong in entering it. Are you suggesting the motion, the order granting the motion to dismiss was a sham or we should ignore it? Not at all. Not at all. It was the only vehicle we had, as the Weerdes case recognizes, to get before this court. He tried once before, and we were unsuccessful because of, actually the defendant appealed before when Judge Fulham, who found there was no ambiguity, was reversed because of the law of the case, not on the merits of his finding. We have held that a voluntary dismissal without prejudice is not a final order. And so, of course, if you did that, we would say there's no jurisdiction. So you say, well, the way to fix that is to make it a voluntary dismissal with prejudice. But aren't you really trying to say, well, it's a voluntary dismissal without prejudice, but we're calling it with prejudice because otherwise you won't listen to it. But isn't that just a charade to try to get around our prior rulings, saying that it's not a final order if we decide this issue and it will go back and the whole case will be presented all over again? Well, Your Honor, it certainly wasn't intended as a charade. It was intended as a way to get this issue determined to see whether the plaintiffs can go forward with their case in federal court or it will end, because we have made statements on the record we will not arbitrate this claim. It is much too risky. There are too many problems with both. These cases were not cited in your brief. The Trevino-Brown case was cited where this case was not, and I apologize. Well, why don't we allow you to file a brief letter brief on these new cases within 10 days, and we'd ask your opponents to also do it within 10 days on these new cases and give us your interpretation of those. Thank you. Thank you, Mr. Monti. Mr. Griffith. Just to clarify, Your Honor, we'll have time to respond. No, within 10 days. Okay. And just with respect to that one case. Yeah. Thank you, Your Honor. May it please the Court, Michael Leffel for Appley, Caremark PCS, formerly known as Advanced PCS. Your Honors, if this Court reaches the merits of plaintiff's appeal, the district court's decision should be affirmed for three primary reasons. First, the district court properly found no prejudice and no waiver, where the motion to compel arbitration was filed without any discovery taking place and at a very early stage of the proceedings. Why don't we start with jurisdiction? That sounds like a good idea, Your Honor. I think the issue is, are we going to open up the opportunity to get around the requirement of a final judgment? Here in the Trevino-Barton case, this circuit, and the case that they did cite in the brief, the situation was there. I believe there were five causes of action. Four of those, there was summary judgment entered on there, and there was only one claim remaining. The plaintiff took the risk of abandoning that claim, and it was only because it had abandoned that claim for good, permanently, that it was able to appeal the ruling on the other motions. That is what the Seventh Circuit has held, and that's also the suggestion in the Empire Volkswagen case, which is cited by both parties. Claims that are dismissed with prejudice are dead and gone forever. Judge Roth used the word charade. Yes. It is a charade to do it this way, is it not? Because there's nothing left. I believe it is, Your Honor. When they lose. Yes. The court, of course, does not make advisory opinions as to whether an arbitration can be made. Maybe we should change the case law, say, whenever there's a motion to compel arbitration granted, there's an immediate right of appeal, or denied. There's an immediate right of appeal. Well, and of course, the statute governs that, and obviously the statute is directed and crafted to avoid this kind of interlocutory review. If a case is stayed, as it should be under Section 3, there's no right to immediate review. What about this 1292B certification? It's my recollection that you filed a 1292B to certify your loss on the motion to dismiss to our court. It was not my recollection, counsel says, to the opposite, that they filed a 1292B seeking certification on the grant of the motion. I believe they may have filed that when the case was in front of Judge Fulham, Your Honor. I'm not talking about Judge Fulham. Right. I'm talking about Judge Rubino. Right. And I do think, at some point in time, there was a question about interlocutory review, which was not permitted. And I just can't recall, as I stand here, whether that was a result of Judge Fulham striking the arbitration clause, which, of course, went up on its own appeal. He also found your clause was one of adhesion. So you don't want to invoke him too quickly, do you? No, I'm not trying to invoke him. And, of course, whether the contract is one of adhesion was debated below. I don't think that there was timely submission to the district court on that issue. And, of course, as the Supreme Court said in the Concepcion decision last year, we're sort of past the days where you can strike an arbitration agreement just because it's a quote, unquote, contract of adhesion. But I think the real issue here is, are you going to open up an avenue for parties to, in effect, get interlocutory review by taking an educated risk of dismissing their claims with prejudice, perhaps with no repercussions if they prevail? I think that that's going to likely be a very big issue in cases like this one, where there's a class action or there's a contingency fee case, where there will be a great incentive to dismiss the named plaintiff's case with prejudice voluntarily to obtain an appeal that could result, obviously, in settlement negotiations with the defendant or give new life into the case, which would not bar the claims of other named plaintiffs because it wouldn't have preclusive effect. That's the concern. And I think that's the concern highlighted by this court in Marshall. Well, if we were to reach the merits and find that the motion to compel was inadvisably entered, where do they go then? What happens to plaintiff's case? It's still over. It's over? According to what I think is the guidance this court has offered before, in Trevino, those claims are lost for good. There's only one claim here. This is a one-count Sherman Act case. It's gone. Exactly. So that even if they win here, they lose. Right, which is why the case would be moved, and this court, at least as said before, we're not in the position of offering it. Why should we bother even hearing it? I mean, it doesn't... I agree, Your Honor. I would note that, obviously, there are other avenues for them here. I mean, there is a 1292B, even if unsuccessful. I mean, the reason there's a certification requirement is because you only want certain cases going up on a 1292B appeal. They could have gone to arbitration, as you pointed out. In fact, they could have gone to arbitration and asked for preliminary rulings on the issues that we and Judge Robreno think should have been for the arbitrator anyway to determine whether they could have pursued those claims, to determine whether the fee-shifting provision was enforceable under the contract. But they chose not to. Instead, they chose to use this path of dismissing all of their claims with prejudice, and we believe they should be stuck with that. If there are no further questions on the scope, Your Honor, I'd like to talk a little bit about the waiver issue, just briefly. Obviously, the district court did find that the plaintiffs could not demonstrate prejudice. In fact, he pointed out at the hearing that, quote, plaintiffs were unable to pinpoint any specific prejudice other than delay that was caused by defendant's motion to compel arbitration. Now, they've suggested two forms of delay, that they had to litigate this issue here in time. Time usually alone isn't enough. And with respect to litigating the motion to dismiss, that decision, of course, the motion to dismiss those questions would have been presented to the arbitrator anyway, and advanced PCS stipulated below it would not relitigate that issue in front of the arbitrator. We've had some substantial case laws since the time Judge Rubino ruled. We've had Alighter, Nino, Gray-Holko, for example. And Gray-Holko, that's our most recent case of last year, says that prejudice resulting from unnecessary delay and expense incurred by plaintiffs as a result of defendant's belated invocation of their right to arbitrate is sufficient by itself in the waiver inquiry. Well, the court said there, unnecessary delay and expense of litigation. How is the delay necessary here? You've never said you didn't know about the arbitration clause. You've never, and indeed you invoked it in the Texas case much earlier than early. Earlier than we did here. No, you've never suggested you didn't know about it. But there's not been a reason for not invoking it sooner here. The only statement is that substitute counsel or new counsel came in. Of course, new counsel came in more than two months before the arbitration clause was invoked here. So there's really no explanation for why you delayed ten months to invoke a clause. In fact, it didn't even, in the answer to the complaint when it was filed, it wasn't even mentioned. It just seems the natural thing, as I suggested earlier, the only assumption I can make is that you kept it in your back pocket to see what happened on the motion to dismiss. Well, there's another point, Your Honor, and it's one that you raised earlier, Judge Berry, and that is at the time, and I believe still today, this court had required some participation in discovery before there was a finding of waiver. Now, that's all we know from the record. There is no additional evidence of the reasoning here. But I will say that this court has said that the filing of a motion to dismiss is not, in and of itself, of course, grounds for a finding of prejudice. It said that in the Wood case. The Second Circuit and numerous other courts of appeals have raised the same point. And, in fact, the Rush v. Oppenheimer case from the Second Circuit is very similar to this case in that regard. It's cited in our brief, an eight-month delay. They did not raise the ability to compel arbitration in the answer. And I don't know that it would be correct to say, Your Honor, that that was a tactical decision to leave it out of the answer. I don't know whether it was oversight or otherwise. But the Oppenheimer case is very similar to this. And if I could, Your Honor, the new cases cited by the plaintiffs in their reply, if I could address them for just a moment, they set up the distinction between what this court has required and what some of those decisions require or the facts of those cases. This court requires the touchstone of the inquiry to be a finding of prejudice. A finding of prejudice. None was found here. The Seventh Circuit decision that they cite in cabinetry, the Seventh Circuit does not require a showing of prejudice. But nonetheless, We require prejudice. But we say, even in Gray-Hulka, we say, Prejudice resulting from unnecessary delay and expense as a result is enough. And it goes on to say, of litigating a case that the arbitrator later decides. And my point here is what Judge Rebrano found is, you're no different than when you started here because the defendants have stipulated they're not going to pursue that motion to dismiss in arbitration. You would have had to deal with it then. And so there's no significant prejudice here. And importantly, of course, there'd been no discovery. You know, it's interesting. So the standard becomes you can litigate a motion to dismiss and still have your chance at arbitration. Your Honor, I think that was clearly the rule at the time. I think it is largely the rule here with this caveat, Your Honor, which makes this case different. I think it's possible that if you choose this path, certainly if you choose this path today, that you could move to dismiss, you could take certain actions that would prejudice the plaintiffs beyond simply defending the litigation. And again, here it's not going to be relitigated. But take, for example, the Second Circus decision in the Sweater Bee by BAM. There the court said if the district court rules in favor of the plaintiff, then, quote, surely that could not be the plaintiff's disadvantage. I think that's what's happening here. I'm not saying it's without risk to file a motion to dismiss in delay. There are motions to dismiss and there are motions to dismiss. You file a motion to dismiss, you know, the statute of limitations has expired. I don't have any difficulty with that counting very heavily. But this was heavy on the merits. There are words used here that I've not yet heard in my life. This was heavy on the merits. And it wasn't just the plea. There were significant documents attached to the plea. And then you had the motion to reconsideration with the new FTC case. I mean, there was a lot of stuff here. It wasn't just, you know, from the face of the motion to dismiss. That, Your Honor, I would say that's correct. But note that there wasn't a suggestion that what was attached was improper for a motion to dismiss. No, that's right. I mean, there's judicial notice of it. So motions to dismiss and there are motions to dismiss. But why did two hearings before Judge Rubino? Right. You know. Yes. And Judge Rubino who was closest to the facts and at the hearing pressed plaintiffs for how they'd been prejudiced and they couldn't demonstrate it. So I think given the presumption of no finding of waiver and the touchstone requirement of prejudice, plaintiffs were not sufficiently prejudiced here. And the point I was going to make. So time period is not that important. Well, I think that this Court has repeatedly said, including I think in the Kiyon case from earlier this year, that time period alone isn't sufficient. The Rush case in the Second Circuit was eight months. I only want to make one quick note about the Seventh Circuit decisions because in a later Seventh Circuit decision, this isn't discussed in the briefs, obviously, because it's responding to their cabinetry citation, Sharif v. Wellness International Network, 376 F. 3rd 720.  They found no waiver where there had been 18 months past for motions to dismiss and notably the Court cites numerous cases from other circuits for the proposition that the filing of a motion to dismiss does not act as an automatic waiver of the right to compel arbitration. I think here and in the majority view, and the Seventh Circuit admits it's in the minority without requiring a showing of prejudice, the majority view is you have to have a showing of prejudice. Let me address one other Eighth Circuit case which is new that they cite where there had been no discovery. The Court there said prejudice did not apply, although the Eighth Circuit usually applies prejudice, because the party asserting arbitration was the party that initiated the lawsuit and filed its own motion to dismiss a counterclaim. And I think if you look at their other cases, they're similar. The importance of prejudice in those circuits is going to be a reason to distinguish them. Do we consider, I almost hate to raise this, remanding this to Judge Jones, I guess, for reconsideration of the waiver issue in light of the eight years of case law that has been decided since it was originally decided and retained jurisdiction, if we have jurisdiction over this? I don't think that would be appropriate here, Your Honor. Judge Rubino had the same factors that the Court has looked at repeatedly. Well, he also had the factor that at that point in our case law, the issue was for the arbitrator, not the Court. Now we're saying the issue is for the Court. He did decide it as a matter of – he did decide the issue himself, I agree with you. He did, Your Honor, and I think that once is enough. But I understand why that would be – I'd like to discuss the remedy, if I could, Your Honor. Yes, let's get into the ambiguity or lack of ambiguity in the context. Yes, well, the two main concerns that they raised, the preclusion from recovering statutory damages and a loser-pays provision. With respect to the statutory antitrust damages, they really focus on the limitation of liability provision not in the arbitration clause, the indemnification provision not in the arbitration clause, and one provision in the arbitration clause itself, a single sentence, which they want to parse out. The plaintiffs themselves adopt the view that the contract provisions are completely silent on the issues of remedies with respect to statutory claims. In fact, the agreement, as Judge Barry pointed out, requires the arbitrator to follow the rule of law. The full sentence says the arbitrator must follow the rule of law and may only award remedies provided in this agreement. If plaintiffs' view is adopted that the only provision are these particular provisions with respect to advanced PCS, it would read out the qualifying first part of that sentence, follow the rule of law. It would mean that the limitation of liability provision in 7.1 is unnecessary surpluses. You don't need a limitation of liability provision if they're not able to get any remedies. And three, it would also mean that these remedy provisions they're focusing on have surpluses because they end. I'm talking about the confidentiality provision in 6.3, for example. After listing several remedies available to advanced PCS, it goes on to say, quote, all other remedies are available, excuse me, it references the ability to recover, quote, all other remedies provided by this agreement and applicable law. What I think the provision means is read in context, remedies provided by law are available under this agreement with the exception of enforceable limitations contained in the limitation of liability section. The arbitrator just can't go out and create his or her own idea of what would be equity here. It's not going to be that kind of arbitration. Is it your position that the arbitrator could award plaintiff's treble damages for an antitrust violation? Your Honor, I think that the law is, while not. That's a yes or a no. Yes, Your Honor. He could, he could. Yes. And I think to the extent there is no ambiguity here, there is a severance provision that is endorsed by the Arizona law that is governing. It is expressly in the contract. And if you look at the Christian case from the First Circuit that is cited in our brief, what the court there did was found that there was no ambiguity, that you couldn't get treble damages and you couldn't recover your attorney's fees for an antitrust claim. And what it did was it looked at the savings clause, struck those provisions, severed them from the agreement, and compelled arbitration. In this court's cases, mainly in the employment context that I've seen, Your Honor, where there was a panoply of unconscionable provisions, this court in Neno and also in Alexander, which I know Judge Roth had a dissent from, said, look, no person, no reasonable fact finder could find that these could be severed. I respectfully suggest we could at least agree the First Circuit is usually reasonable, and that's exactly what they did when confronted with this issue. Is it clear we're under Arizona law on this unconscionability? The provider agreement provides that Arizona law will govern. I mean, obviously the Federal Arbitration Act governs questions that relate to its enforceability, but otherwise Arizona law applies. And with respect to unconscionability and those issues, I think they should be decided under Arizona law, and where there is ambiguity, as this court said in Keown, then that should be deferred to the arbitrator first to determine whether the interpretation would render it unconscionable. And that's not contested, is it, the application of Arizona law? I don't believe so. The district court originally applied Pennsylvania law. Plaintiffs have earlier asserted that the law is not different, and now they're suggesting procedural unconscionability doesn't need to be shown. I don't think it will matter. Arizona law just deals with substantive unconscionability. Well, it talks about procedural unconscionability and says in certain circumstances something can be so substantively unconscionable that that's all you would need. I think it's fair to say that if they can't prevail on this issue under Pennsylvania law, they can't prevail under Arizona law. I think that's clear. The only thing I would point out is that while the district court judge Rebrano looked at procedural requirement of showing procedural unconscionability, that has to be in the context of the fact that there was no evidence of procedural unconscionability until the motion to reconsider. There was no argument on substantive unconscionability until the reply in the motion to reconsider. And so we think that those arguments were not appropriately raised in the court below. Any other questions? Good. Mr. Leffenthal. Thank you, Your Honor. Thank you, Your Honor. Mr. Montague. Judge Barry, I'd like to refer you to vindicate my memory to the appendix at page 263 through 267, which is an order by Judge Rebrano on 6-1705 in which he denies our motion for reconsideration, the motion to compel order, and denies our alternative for certification under interlocutory appeal. I said I thought you'd probably be right. Well, I wasn't positive, but I wanted to be sure. With respect to the jurisdiction, Your Honor, we did cite another case, albeit a Ninth Circuit case, I wanted to call to your attention, and that's the Homestead v. Dell, Inc. case, in which the court said the appropriate order would have been a ‑‑ this is an arbitration, compelling arbitration appeal. The appropriate order would have been a voluntary dismissal with prejudice under Federal Civil Procedure 41A2. We agree with the First Circuit's reasoning in Johnson's insulation v. Addison that a plaintiff that deems an interlocutory ruling to be so prejudicial as to deserve immediate review has the alternative of dismissing the complaint voluntarily, brackets with prejudice in brackets. That's cited on page 5 of our reply brief. With respect to waiver, since a lot of cases were being thrown around, I didn't get a chance to mention the South Broward Hospital District v. Medquist case, which is also cited in our brief, 258 Fed Appendix 460. That was an unreported case of ours, a non-presidential case of ours. It is a non-presidential case. You can cite it to us, but we can't cite it to anybody under our rules. Well, for what it's worth, it is almost on all fours in this case in terms of what happened. Including the fact there was no discovery in that case, right? Lastly, with respect to the trying to exclude the rest of the pharmacy providers agreement from the arbitration clause, the clause in question says, may only award remedies as provided in this agreement. So it does bring in the other parts of the agreement, the sections that I referred to. The last thing I'd just like to mention, Your Honor, is I believe it is, is it the Holtco case, the Gray-Holtco case, says that the drafter is stuck with what he drafted. The Benino case, I'm sorry, said the drafter is stuck with what they drafted. So now to try to reform that. And even in response to your question, Judge Barry, as to are treble damages allowed, you didn't get a yes or no. You got an I think. I got a yes. I thought I heard an I think. Well, I think this time I'm right. Okay. I heard a yes, and I'm sure Mr. Leffel disagrees with that. I'm sure he will stand up and say so. All right. He's not standing up. Thank you. Thank you very much, Mr. Montague. The case was very well argued. We will take the matter under advisement. We thank lawyers for excellent briefs and excellent arguments.